*[handwritten: / ω/ S]*

**FILED**

OCT 1 6 2009

Clerk, U.S. District **and**
Bankruptcy Courts

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CONTINENTAL CASUALTY COMPANY and )    *[handwritten: CNA plaza*
TRANSPORTATION INSURANCE COMPANY )    *Chicago, IL 60685]*

        Plaintiffs,    *[handwritten: CNA plaza Chicago, IL 60685]*

    vs.

DELON HAMPTON & ASSOCIATES, CHARTERED,

        Defendant.    *[handwritten: 900 7th ST, NW Suite 800 Washington, DC 20001]*

**Case: 1:09-cv-01953**
**Assigned To : Walton, Reggie B.**
**Assign. Date : 10/16/2009**
**Description: Contract**

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME the Plaintiffs, CONTINENTAL CASUALTY COMPANY ("Continental")
and TRANSPORTATION INSURANCE COMPANY ("Transportation"), by and through their
attorney, Anthony D. Dwyer, and for their Complaint for Declaratory Judgment against
Defendant DELON HAMPTON & ASSOCIATES, CHARTERED ("Delon Hampton"), hereby
allege as follows:

### NATURE OF ACTION

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §2201, wherein
Continental and Transportation (collectively, "Plaintiffs") seek a declaration that certain policies
of insurance issued by them to Delon Hampton do not afford a duty to indemnify Delon
Hampton with respect to five personal injury lawsuits ("Underlying Actions") allegedly arising
out of Delon Hampton's completed architectural work on a center rail extension project ("the
Project") in Memphis, Tennessee.

## PARTIES

2.     Transportation is an Illinois corporation with its principal place of business in Chicago, Illinois.

3.     Continental is an Illinois corporation with its principal place of business in Chicago, Illinois.

4.     Delon Hampton is a professional corporation organized under the laws of the District of Columbia with its principal place of business in Washington, D.C.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.     Venue is proper in this District, pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events giving rise to Delon Hampton's claims for coverage occurred within this District.

## THE UNDERLYING ACTIONS

7.     Delon Hampton has been sued in state court in Memphis in five separate suits ("Underlying Actions") arising out of Delon Hampton's completed design work on a center rail extension project ("the Project") in Memphis, Tennessee.

8.     The individual suits, dates of the accidents and filing of the suits are as follows:

| Plaintiff(s) | Date of Injury | Date of Filing of Lawsuit |
|---|---|---|
| *Carrie Kelley v. Hill Brothers Construction Company, Inc., et a* / Case No. CT-004150-05 | August 6, 2004 | August 4, 2005 |
| *Jeffrey Kelley v. Hill Brothers Construction Company, Inc., et al* / Case No. CT-004101-05 | August 6, 2004 | August 2, 2005 |
| *Rickey E. Moore and Tracy L. Moore v. Memphis Area Transit Authority, et al* / Case No. CT-004519-05 | August 25, 2004 | August 22, 2005 Delon Hampton was first named as a defendant in the Second Amended Complaint filed on January 3, 2007 |
| *Lori Simmons v. Hill Brothers Construction & Engineering Company, Inc., et al* / Case No. CT-005098-06 | October 1, 2005 | September 29, 2006 |
| *Judy Wimbs and William "Ty" Wimbs v. Hill Brothers Construction & Engineering Company, Inc., et al* / Case No. CT-003079-06 | January 20, 2006 | June 15, 2006 |

9.      Copies of amended complaints in each of the Underlying Actions are attached hereto as Exhibits A through E.

10.      The complaints in the Underlying Actions, which are nearly identical, allege that the plaintiffs were injured (and, in the *Simmons* case, killed) in accidents in which plaintiffs were riding motorcycles which went into a gap in the rails constructed during the Project and caused plaintiffs to be thrown off their motorcycles.

11.      The Underlying Actions allege that Delon Hampton was hired to be the "Project Manager" (*C. Kelley, J. Kelley,* and *Wimbs* complaints) or the "Project Manager and/or Architect and/or Engineer" (*Simmons* and *Moore* complaints).

12.      The Underlying Actions allege that Delon Hampton's obligations were "to approve all construction work done on the trolley extension project" and to "inspect the project" (all complaints) and "to inspect the project within a reasonable standard of care" (*C. Kelley, J. Kelley, Wimbs* complaints) and "to act within a reasonable standard of care and to exercise reasonable and ordinary care" (*Simmons* and *Moore* complaints).

13.   None of the complaints alleges that Delon Hampton's duties included actual construction; instead, the alleged duties are limited to approval and inspection of the construction work.

14.   The *J. Kelley* complaint, filed on August 4, 2005, alleges that more than thirty motorcycle accidents occurred at the location due to the defective, unsafe or dangerous roadway and trolley tracks, prior to the Kelley wreck in question, which happened on August 6, 2004. *See* Exhibit B, par. 16.

15.   The *Simmons*, *Moore* and *Wimbs* underlying complaints likewise allege that there had been "numerous" or "various" prior accidents at the scene. *See* Exhibit C, par. 29; Exhibit D, par. 23; and Exhibit E, par. 19.

## THE DELON HAMPTON CONTRACT

16.   Delon Hampton's work on the Project was authorized by the "Contract By and Between Memphis Area Transit Authority and Delon Hampton & Associates, Chartered for Design of the Medical Center Rail Extension Project," made on November 2, 1998 ("the Contract").

17.   A true and correct copy of the Contract is attached hereto as Exhibit F.

18.   Pursuant to the Contract, Delon Hampton was engaged as "Architect/Engineer" for the Project and assigned work in accordance with the Scope of Services set forth in an Appendix A to the Contract.

19.   The Contract called for Delon Hampton to prepare a project schedule and conduct geotechnical investigations, then to prepare the design and plans for the Project and to conduct studies.

20.     During the final "Construction Services" phase of the Project, the Contract called for Delon Hampton to (among other things) respond to requests for information from the contractor and to "perform site inspections" and "prepare punch list/final inspection."

## THE POLICIES

21.     Continental Casualty Company ("Continental") issued Delon Hampton three primary CGL separate, consecutive one-year policy periods from August 15, 2003 to August 15, 2006 (the "Primary Policies").

22.     Transportation Insurance Company ("Transportation") provided commercial umbrella coverage for the same policy periods (the "Umbrella Policies").

23.     The policies are as follows:

| Carrier / Policy No. | Policy Period | Limits |
| --- | --- | --- |
| Continental / C 9001062495 | August 15, 2003-2004 | $1M Completed Operations |
| Transportation / C 6001062491 | August 15, 2003-2004 | $9M x Primary |
| Continental / C 9001062495 | August 15, 2004-2005 | $1M Completed Operations |
| Transportation / C 6001062491 | August 15, 2004-2005 | $9M x Primary |
| Continental / P 9001062495 | August 15, 2005-2006 | $1M Completed Operations |
| Transportation / P 6001062491 | August 15, 2005-2006 | $9M x Primary |

24.     True and copies of the policies are attached hereto as Exhibits G through L.

25.     All of the Policies at issue were sent to Delon Hampton at its corporate office address in Washington, D.C.

26.     Each of the Primary Policies and each of the Umbrella Policies is subject to its respective terms, conditions and exclusions.

27.     The Primary Policies each contain the following amendment to the Insuring Agreement:

## AMENDMENT OF INSURING AGREEMENT – KNOWN OR CONTINUING INJURY OR DAMAGE

* * *

**1. Insuring Agreement**

* * *

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) With respect to "bodily injury" or "property damage" that continues, changes or resumes so as to occur during more than one policy period, both of the following conditions are met:

            (i)    Prior to the policy period, no Authorized Insured knew that the "bodily injury" or "property damage" had occurred, in whole or in part; and

            (ii)   During the policy period, an Authorized Insured first knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

            For purposes of this Paragraph **1.b.(3)** only, if **(a)** "bodily injury" or "property damage" that occurs during this policy period does not continue, change or resume after the termination of this policy period; and **(b)** no Authorized Insured first knows of this "bodily injury" or "property damage" until after the termination of this policy period, then such first knowledge will be deemed to be during this policy period.

    **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any Authorized Insured includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any Authorized Insured:

    (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2) Receives a written or verbal demand, claim or "suit" for damages because of the "bodily injury" or "property damage"; or

    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

28.    The Primary Policies each contain the following professional liability exclusion

("Designated Professional Services Exclusion"):

    With respect to any professional services shown in the Schedule ["ENGINEERS AND ARCHITECTS"], this insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" due to the rendering or failure to render any professional service.

29.    The Primary Policies also contain a second professional liability exclusion

("Contractors - Professional Liability Exclusion"), which states as follows:

    1.    This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

        a.    Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

        b.    Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2.      Subject to Paragraph **3.** below, professional services include:

      **a.**      Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

      **b.**      Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.**   Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

30.      The notice provision of the Primary Policies provides as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;

    (2) The names and addresses of any injured persons and witnesses; and

    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.**  If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

8

   **c.** You and any other involved insured must:

     (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

* * *

31.    Continental is paying for a portion of Delon Hampton's defense subject to a complete reservation of Continental's rights and defenses.

32.    The Umbrella Policies each contain a professional services exclusion ("Professional Services Errors and Omissions Exclusion Endorsement"), which states as follows:

> This insurance does not apply to any liability arising out of any act or omission or rendering of or failure to render professional services by you or any other person for whose acts you are legally responsible, and arising out of the performance of professional services for others in your capacity as a (an): * * * ENGINEERS AND ARCHITECTS

33.    The Umbrella Policies contain another exclusion entitled "Contractor Limitation Endorsement," which is nearly identical to the "Contractors - Professional Liability Exclusion" found in the Primary Policies.

34.    Plaintiffs seek a declaration that they owe no indemnity to Delon Hampton with respect to the Underlying Actions for which Delon Hampton seeks coverage. Accordingly, a real, substantial and justiciable controversy exists between Plaintiffs and Delon Hampton, which is subject to resolution by this Court under 28 U.S.C. §2201.

## I. DECLARATORY JUDGMENT

35.    Plaintiffs hereby repeat and incorporate by reference Paragraphs 1 through 34 as though fully set forth herein.

36.    Plaintiffs are entitled to a judicial declaration that the Primary and Umbrella Policies do not provide coverage for the "bodily injury" claims alleged in the *Kelley* Suits, *Wimbs* Suit, *Moore* Suit and *Simmons* Suit.

9

37.     Coverage for the "bodily injury" claims alleged in the Underlying Actions is barred to the extent that they were not fortuitous.

38.     Coverage for "bodily injury" claims alleged in the Underlying Actions is barred to the extent that any of the claims do not constitute an "occurrence."

39.     Coverage for "bodily injury" claims alleged in the Underlying Actions are not covered under the Primary or Umbrella Policies to the extent they were known losses or losses in progress.

40.     The Primary and Umbrella Policies contain exclusions barring coverage for bodily injury arising out of the rendering or failure to render professional services and therefore the claims allegedly arising from Delon Hampton's services, which were professional in nature, are not covered.

41.     In addition, the Primary and Umbrella Policies contain an exclusion barring coverage for Expected or Intended Injury, which may preclude coverage for the "bodily injury" claims alleged in the Underlying Actions.

42.     The Primary and Umbrella Policies require notice as soon as practicable as a condition precedent to coverage.  Delon Hampton did not provide notice as soon as practicable to Continental or Transportation, and thus Delon Hampton does not have coverage for claims alleged in the Underlying Actions.

43.     To the extent Continental or Transportation have any obligations under the Primary or Umbrella Policies with regard to the claims alleged in the Underlying Actions and Delon Hampton has other insurance, the Plaintiffs' obligations are shared with Delon Hampton's other carriers.

44.     To the extent that Transportation has any obligations under the Umbrella Policies with regard to the claims alleged in the Underlying Actions, it has no obligations until all primary insurance is exhausted.

45.     Other terms and conditions of the Primary and Umbrella Policies may ultimately offer defenses to the claims alleged in the Underlying Actions under the Policies depending on the course of disclosures made through discovery.   Nothing in this Complaint should be construed as a waiver by Plaintiffs of any other coverage defenses available under the Policies or the law, and Plaintiffs reserve the right to raise all other policy terms, definitions, exclusions and conditions as defenses to coverage as appropriate.

WHEREFORE, for the reasons set forth here in above, Plaintiffs pray that this Honorable Court enter a judgment as follows:

(a)     Declaring that Continental owes no duty to indemnify Delon Hampton with respect to the Underlying Actions;

(b)     Declaring that Transportation owes no duty to indemnify Delon Hampton with respect to the Underlying Actions; and

(c)     Granting such further relief as this Court deems just and equitable.

Dated: October *13*, 2009

11

CONTINENTAL CASUALTY COMPANY and
TRANSPORTATION INSURANCE COMPANY

By:_____

   Anthony D. Dwyer, Bar #07397
   Law Office of Anthony D. Dwyer
   6011 University Blvd., Suite 480
   Ellicott City, Maryland 21043
   (410) 720-4660
   *Counsel for Plaintiff*